Next case is Thomas Edwards v. Continental Casualty Company May it please the Court. My name is Richard Simpson. I represent Continental Casualty Company. This case really goes to the first principles of insurance contract interpretation, that is, if the language of the policy is clear and unambiguous, a court applies it as written by its plain meaning. It does not seek to vary the language or to obtain a different result by looking at supposed intent of the language. If the language is clear and unambiguous, the language controls. I think the source of the confusion here that resulted in error in the district court was a failure to focus on the claim that is in question, and that is the claim against Mr. Edwards, who is the insured attorney, not the claim against Mr. Schmidt, who is the client. No one could think that this lawyer's professional liability policy provides coverage for a claim against Mr. Schmidt. It only provides coverage for the lawyer, Mr. Edwards. And if you look at the claim against Mr. Edwards here, the complaint could not be more clear. It says two things. First, we're not alleging that he did anything wrong. We are not alleging he made a mistake. We're not alleging he committed a fraud. We're not alleging he dropped the ball. He did nothing wrong. We are naming him as a defendant solely because, without his knowledge, without the lawyer's knowledge, the client did something wrong. The client committed a fraud. And because the client committed a fraud, we're entitled to all of our settlement money back, including the fee that was paid to Mr. Edwards. It's an unjust enrichment-type claim, saying you got money that you shouldn't have gotten, therefore you have to give it back to us. They sought other relief. This is CalDrive, the plaintiff and the underwriters at Lloyd's. They sought other relief from Mr. Schmidt. But as for Mr. Edwards, the only thing they asked for was the money back, and the money was his contingent fee. Well, that was in a settlement, so we're talking about a contract claim here. Is that correct? I think, as to Mr. Edwards, it's an unjust enrichment claim. Basically, in the underlying — it is an unjust enrichment claim. In the underlying case, there was a tort claim, there was a settlement. But the tort claim is gone. Yes. There's a contract of settlement. Yes. Yes. Edwards is asking that his legal malpractice insurer defend him in a contract claim. Well, it's — How do we expand — this is a friendly question. Yeah, no. How do we expand your client's — Coverage. — coverage to a personal contract matter? Yes, Your Honor. And the key is, as Mr. Edwards, it's trying to — as you say, it's an insurance — rather, it's a settlement of the underlying case, and now it's an effort to undo that contract. It's not a legal malpractice claim. The policy is intended — and not just the professional liability, where they allegedly made an act error — committed an act error omission, and someone says it harmed them. But doesn't this claim by Kaldive, trying to recoup this money from Mr. Edwards, doesn't this arise out of Mr. Edwards' legal representation of Mr. Schmidt in the underlying litigation? Only in the very broadest sense, and that is that there was an underlying case. Well, aren't insurance coverage provisions supposed to be interpreted broadly to provide coverage? They are, Your Honor, but there are two separate issues here. The first is the legal services issue, and that's what I believe Your Honor's question goes to. And as to that, if you look at the — the definition of claim says arising out of legal services, but then the insuring agreement says it has to be a claim by reason of an act — a claim for damages by reason of an act error omission in the performance of legal services. Well, an act in performance of legal services is, by definition, the representation in the underlying suit. Well, there isn't a — there's no claim that anything that Mr. Edwards did was the Well, they negotiated the settlement. Yes. He negotiated the settlement. And no one contends that he did anything wrong. Now, certainly negotiating a — He doesn't have to do anything wrong to have coverage. Well, he has to have a claim against him by reason of something he did. Right. And this is not — He did. It doesn't have to be wrong. He negotiated the settlement. Well, if I may, Your Honor, on this point, I would point the Court to — and this is a case that's cited in our brief, but in retrospect, I wish we'd cited it more prominently than we did. That's the Elliott case of the Louisiana Supreme Court. It's a very important case on this issue because there the Court — it was actually the same policy form. It was a Continental Cashly Company case, so it's the exact same language. And there, there was a dispute between two lawyers. And one lawyer said, you referred a case to me. I took it on. I wouldn't have taken it on if I knew that you had blown the statute of limitations in essence. You failed to tell me you blew the statute of limitations. And the Louisiana Supreme Court said under this same form, there's not coverage for that because although missing the statute of limitations, having the claim prescribed, was malpractice, that's not the basis of the claim. The basis of the claim is you didn't disclose to me you committed malpractice. And so I think on this issue, Your Honor, by reason of an act or omission in legal services, that case is on point. But the thing I'd want to emphasize in response to Your Honor's question is that there are two prongs that have to be met. The first is the legal services point. And I believe Your Honor's question goes to that, and I've tried to answer and explain why we think there are not legal services. But assuming they are right, that there are legal services, this is a claim by reason of an act or omission in legal services, there still has to be a claim for damages. And damages are defined in the policy. I see where if this were an indemnity case, damages would have to cover damages and then you have the exclusion for attorney's fees that you're going to talk about. Yes. But I'm probably just confused because everyone seems to agree that damages issue also goes to this duty to defend, which is all that's at issue here. But walk me through that, because the way I see it, B is the duty to defend, and it talks about a lot of stuff, including it must be a claim, but it says nothing about damages. If you look at the definition of claim, it says a lot of stuff, but it says nothing about damages. So are you relying on A, the coverage paragraph, to loop damages into the duty-to-defend provision? Looping it into the insuring agreement, and the reason, Your Honor, is, and the parties didn't dispute this point, as you pointed out below, and that is because it is Hornbook law in Louisiana as elsewhere, that if there is no possibility of a covered damages — damages — there's no possibility of a covered judgment, then there is no duty to defend. If there is a possibility of a covered judgment, then there is a duty to defend. So, for example, one of the cases that is cited by the parties in this case involved — it was a Fifth Circuit case — it involved a circumstance where the court said, well, most of what they're — they found a duty to defend, the Fifth Circuit did, this Court did, because most of what was sought was return of legal fees, but there were also other things. The client said, well, you delayed in telling me about the settlement, you gave me bad advice. And the court said there could be something that's not legal fees. The reason here that indemnity coverage and defense coverage turn on exactly the same point is there's no question that the only thing sought is return — for Mr. Edwards — is return of legal fees. The complaint says that. So you don't get into — the policy provision talks about legal fees or injuries that are a consequence thereof, and there are cases out there that talk about how close it has to be to be a consequence. You don't get into any of that because the complaint says all we want is our money back. All we want — from you, lawyer, all we want is the fees that you got back. And if you look at this definition of damages, it does not include legal fees, costs, and expenses paid or incurred or charged by any insured — that's his contingent fee — no matter whether claimed as restitution of specific funds. This is restitution. Forfeiture, financial loss, set-off, or otherwise. So what it's saying is, as clearly as you can say it, is that if the claim is to get back legal fees, we don't cover returning legal fees. If you have to give back fees that you received, we don't cover that. It's a reasonable provision, but the question isn't whether it's reasonable or not. It's whether it's ambiguous, and there's no ambiguity in it. They don't cover it for indemnification, or they don't cover it to defend against? They don't cover — well, you don't cover to defend if that's the only thing sought because of the Hornbook law, that if there's no possibility of a covered judgment. Now, if there were a claim that said we want our legal fees back, and in addition, you committed malpractice in handling my case, and I would have gotten a bigger judgment if you had only made this argument. Well, that's a claim by the insured. What's that? That's what we have here. That would be a claim by the insured. No, it would be a claim — if there's a claim against the insured that says the insurer committed malpractice, and we not only want our fees back, we also want other damages, well, then there would be a duty to defend if there's no other. Is there a distinction in what you said about recovery of fees being limited to the client of the insured lawyer who has paid him fees and want it back, whereas here it's the other side that is seeking recovery of legal fees? Yes, Your Honor, and I think that's where the trial court went astray because it started talking about the purpose of this and that it has to do — this provision, supposedly the purpose is fee disputes with a client. It doesn't say that. It says this kind of relief. And so it doesn't matter who is seeking it. And this kind of policy, a lawyer's policy, covers claims by non-clients. And both the coverage provisions and the limitations apply. It doesn't matter who the plaintiff is. If you look at this language, when it says damages do not include, it's — the focus is on what are the damages, what is sought, not who is seeking it. So it should be entirely irrelevant to the analysis that it's a third party rather than the client. The point — What if hypothetically this lawyer had not had automobile insurance and he's driving to court to represent this client and has a wreck? That's arising from professional services. Does this — is he owed a defense by Continental? No, Your Honor. I think that that — the notion of an auto accident on the way to court stretches, whether it's arising out of or by reason of, too far. That's not practicing law. Well, why is — how is that different from this case? Well, because in this case, it's a claim — well, as I say, in a sense it's not, in that there's no allegation that this lawyer — as I said, there's no allegation he did anything wrong. It's not a malpractice case. The language says it's not just arising out of the rendering of legal services, which might include the car wreck scenario. It's arising out of an act or omission in the rendering of legal services. Yes, exactly. So doesn't the act or omission have to be something narrower than the mere fact of representation? Yes. It has to be. The notion is, and it's common sense, you made a mistake in representing — in handling a legal matter. You know, there's a claim — that's why you buy insurance. It doesn't say coverage is only if you make a mistake. No. No, it doesn't, Your Honor. But — well, it does say it in the sense that if you're alleged to have committed an act, error, or omission in performing legal services, we'll provide coverage. So you have to have that. Then here, the second — assume you have that. We don't think you do, but assume you do. It also has to be — they have to get over this hurdle that the — there's no possibility of a covered judgment. There is no way a judgment in this case could ever be covered because it's really the paradigm case. The plaintiff says, I don't want anything from you except return of your fee. And whoever's bringing the claim, this policy doesn't cover return of a fee. And so there's no possibility of a covered judgment. How much money is at stake? The other — the case was dismissed at Rule 12. We've now affirmed that, another panel of our court. It's got to be a small sum of money, right? It's certainly smaller than, you know, when the case was filed. I don't know the exact amount, although Continental's been complying with the district court judgment. I can say, from Continental's standpoint, we're not here because of the amount of money. This is a really important principle because it's how the policy works, and it comes up, as the cases indicate, it comes up over and over again. And so this decision, we think it's erroneous. It's a precedent that impacts a number of cases, and that's why it's important. You have all those cases out there. It seems like maybe your provision in your coverage in the policy might be ambiguous. Well, no, because, in fact, the company has won almost all of them. The couple that we have not won are distinguishable. I think my time is up, but I can refer to — Answer the question. The couple that we have not won — when I say we, I'm referring, you know, to the client, and I was counsel on some of them, but not all of them. But there's something called the losses of Melvin James Kaplan in Illinois, and there there was an allegation that the — a bankruptcy attorney failed — committed malpractice by failing to get a discharge for the client of pre-bankruptcy debts, including the lawyer's legal fees, and then post-discharge collected them. And the appellate court there, the state appellate court, said the damages, the amount awarded, although it was measured by attorney's fees, was damage from malpractice. I'm not being very articulate, but basically the court said, the allegation is you committed malpractice by not getting a discharge. The damages are measured by attorney's fees. Continental disagrees with that conclusion, but it's easily distinguishable from this because here there's no allegation anyone committed malpractice. That's the only case on this policy form I can think of that Continental has lost other than the decision below. Okay. Thank you. Thank you. Mr. Stanley. Good morning, Your Honors. Rick Stanley here today for Tom Edwards. A few preliminary matters to put this appeal in context. As Judge Costa pointed out, the underlying case is over. Earlier this year, this Court affirmed the dismissal of the CalDive complaint, so there is going to be no more defense cost in the case and there is going to be no indemnity claim in the case. The amount at issue is a little bit over $100,000. There was a lot of fighting in the District Court, so it's not a nominal sum and it's a very important sum to my client, although there has been no clawback claim in this case. So right now I think we're just talking about the theoretical issue of whether the District Court should or should not have granted a declaratory judgment. There's also no dispute here about the legal standards, which I'm sure is familiar to everyone on the bench. The duty to defend is broader than the duty to indemnify. It attaches if any claim in the complaint read toward the insured's favor could invoke coverage, could potentially invoke some coverage. And if the insurer relies on an exclusion to deny coverage, which I think this would be on the damages portion, if it's an exclusion, the issue must be unambiguously excluded from the policy. Here, Continental has raised two arguments. One, they say Continental's, I'm sorry, Caldive's complaint did not seek damages as defined by the policy, and they also say Caldive did not allege any wrongdoing by Mr. Edwards. I think each point is incorrect for two reasons. First, let me start about the wrongdoing point. I think Continental is reading the complaint far too narrowly. First, the complaint alleges two claims for relief against Mr. Edwards, both of which would require some proof of wrongdoing for Caldive to succeed. It seeks rescission, which under Civil Code Article 1952, would only allow for recovery for error by Caldive if Edwards were shown to either have known or should have known of the error that led to the settlement agreement. So without some proof of fault against Mr. Edwards, that claim cannot succeed. Was there an allegation? Is there an allegation he knew or did anything wrong? I didn't see that in the ---- Well, I'm going to ---- let me go right to that because that's the second point. I think there's, if you read the pleading, perhaps more naturally as a lawyer would and not hyper-technically, there are allegations against the lawyer. In particular, I'd refer the Court to paragraphs 14 through 17 of the complaint. Paragraph 14 states, in the complaint, Schmidt alleged that he was permanently disabled and so forth. Well, Mr. Schmidt didn't write the complaint. The lawyers wrote the complaint. So although the paragraph says Schmidt alleged it, this is an allegation that goes to the lawyers. Paragraph 15, again, Schmidt alleged that he suffered a permanent brain stem injury. The lawyers alleged that Schmidt had a permanent brain stem injury. Even though this complaint says Schmidt, these are actions by the lawyers. Pardon me for interrupting, but what do you do if you're saying those are the lawyers and not the client with Kaldive's stipulation that the lawyers did nothing wrong? Well, Judge, it's not quite that. What they said was as to the fraud claim, there were four causes of action. As to the fraud claim, they said, Mr. Edwards, we don't believe Mr. Edwards knew of the fraud. So it was a much narrower stipulation in the complaint than is being suggested here. Fraud goes to the cause of action? Yes. It was the fourth cause of action, and that was asserted only against the client, not against the lawyers. And so as to that fourth cause of action, but the allegations that I'm referring the Court to, paragraphs 14 through 17, are the general factual allegations that support and underlie the claim for rescission and the claim for unjust enrichment. It seems like a new argument, though. I mean, the district court didn't say there was anything alleged against the lawyer in the complaint. He just basically said it didn't matter because it arose out of the legal representation. I think the district court took a narrower path, but since this has been stressed so much in the briefing, I thought I wanted to emphasize it to the Court, and it was emphasized in oral argument that, well, the lawyer did nothing wrong. Well, the complaint read fairly actually does make allegations against the lawyer, and the fact that the lawyer wrote the complaint, the fact that the lawyer made these allegations, they say, for instance, on paragraph 16, Schmitt presented evidence. Well, Schmitt didn't present any evidence. Mr. Edwards presented the evidence. So I don't think for insurance coverage purposes and a duty to defend, you can look at a complaint that narrowly. You have to look at it more as a natural. What are the natural allegations here? And some of these allegations do reach the conduct of the lawyer. Now, the second point about damages I want to also focus on. Why does every petition refer to the party and not counsel as doing... It didn't say his lawyer alleged this. And every petition and every response says it that way. Yes, Your Honor. The lawyer is not doing that. I can't speak to why Caldine's attorneys framed it in that fashion. And those attorneys are not here today. But there are... Every attorney frames it in that fashion. There are allegations that go directly to Schmitt when they say Schmitt testified. Schmitt testified. Schmitt testified. Now, those are clearly allegations against the client, not against my client, the lawyer. But the other ones where they say Schmitt alleged, Schmitt alleged, Schmitt presented evidence I think is a euphemism for Schmitt's lawyers. They just didn't write it that way. But all of us as lawyers know that that's an allegation against the lawyer, not against the client. So, I don't think you should turn coverage on that type of distinction. Well, looking at the policy provision, do you agree that an act or omission that invokes the duty to defend must be something more specific than merely providing legal services or engaging in a legal representation? I think the act or omission has to itself relate to the legal representation. So, the hypothetical of the auto accident I don't think you could get under the definition of the policy. But in this case, where you're negotiating a settlement, you're drafting the complaint, you're representing the client, those are acts, including the allegations in 14 through 17. These are acts and or omissions by the lawyer that would be the basis for the cause of action against the lawyer. And the two claims made against the lawyer, both unjust enrichment and rescission, would require some proof of fault, some proof of wrongdoing. Louisiana law is clear on unjust enrichment that if the lawyer shows that he had a right to receive the funds by a juridical act, then there's no cause of action for unjust enrichment. So, by definition, you'd have to prove, to get the money back, that he had no right. So, again, you're going to have to prove some kind of fault or wrongdoing on behalf of the lawyer. Well, why would it be on behalf of the lawyer? Why wouldn't it be on behalf of the client? Well... I thought that was your big position. And Judge Clement, let me go to that because that goes directly to the peculiarity of this particular case and this particular settlement. Caldive did not pay Mr. Edwards' legal fees. As part of the settlement agreement, Caldive gave Mr. Schmidt a sum of money and then they bought three annuities through Berkshire Hathaway. One in favor of Mr. Schmidt, one in favor of Mr. Edwards, and one in favor of a third attorney who's not here today. So, then, as those annuity contracts began to play out, Mr. Schmidt received money from Berkshire Hathaway as part of the annuity contract. And I think this is a very critical point for the Court. The complaint seeks to cancel the Berkshire Hathaway contracts and ask Berkshire Hathaway, give us back, give Caldive back the money that has not yet been sent out. But then seeks also from Edwards recovery of anything you have yet received from Berkshire Hathaway. Now, that's not defined, but if this annuity contract works like any other annuity contract, Mr. Edwards' payments from the annuity contract don't equal what was paid to buy the insurance contract. So, the funds Mr. Edwards is receiving do not equal what Caldive paid. That is a damage claim. That is a claim where Mr. Edwards is going to have to come out of his pocket and put up money. He's not returning money from his trust account. He's going to have to, by the allegations of the complaint, and this is in page 16 of the complaint, section 2D of the relief, the complainant Caldive says, return all funds that you've received from Berkshire Hathaway. So, there is going to be there's not going to be complete overlap between what was paid by Caldive and what was received by Edwards. That's a damage claim. I mean, what's the answer to so what? Well, the answer is that that's just the mechanics of moving deaf, dumb and blind dollars. It's still a question of whether this comes under the policy's definition. Correct. And what I'm suggesting, Judge Weiner, is that if any one element of this complaint states a cause of action arising out of a legal representation for which damages are sought not legal fees, but damages this allegation meets that test. Even though it may be a small sum of money, it does not matter for the purposes of coverage. So, the fact is that we thought that the allegations of the complaint clearly went broadly enough to pick up a duty to defend this case. Now, at the end of the day, would there be a duty to indemnify? We don't know. But for? Is that correct? Yes. And to me, I'm having trouble disabusing myself of the comparison of the horseshoe nail. That's too remote to get to the loss of the war. Well, Judge, the law seems at least in the context of this case, not to be as Again, most of the cases that Continental cites are cases by clients suing lawyers to recover excessive fees, unlawful fees. The Pius case out of the Western District was a case where the lawyer charged more than the workers' comp statute allowed. So the client sued for the excess fee to be returned. The lawyer asked for coverage. The district court appropriately said no. The fact that these are fees is a red herring. This is the client who was sued by this lawyer, not his own client. And these are damages that that CALDAB is seeking that have no relationship to the practice of law. Well, they are certainly damages. And I think that they do have a relation to the practice of law because but for the fact that But for the fact that Mr. Edwards was the lawyer and engaged in the representation and made the allegations in the complaint and presented the medical evidence that the complaint complains about, he would not be a defendant. And I would also point the court to the Cole case which is out of the District of Columbia circuit. One of your honors asked a question Cole didn't involve this language of act or omission in the rendering of legal service. It wasn't the exact same policy language. Not the exact same policy. It was a prior policy of Continental, but 1987 case, and I'm at the age now where that doesn't seem so old for me. But there are two quotes from this case that literally could be picked out and put into this Court's opinion. C&G was the law firm, and the Court said it was C&G's as an attorney in March, specifically its settlement of the case and its acceptance of attorney's fees that gave rise to Berger's claims. And the Court used that to say clearly this is relating to or rising out of the representation. And the next argument that was made was, well, these are just legal fees. And Judge Mikva went forth at the end of the opinion and said even if C&G had been obliged to pay back the fees previously paid to it, that too would have been within the ambit of the policy's coverage. So you have cases like this. You have cases like the Kaplan case, which I know Continental wishes to distinguish, but is closer than you'd think, that do say that legal fees can sometimes be a yardstick for a damage claim. And when that occurs, when legal fees are a yardstick, it's not the run-of-the-mill give-me-the-fee-back suit between the client and the lawyer. I think Continental's position makes sense in that regard. When the client is suing the lawyer for the legal fee back, generally that's not going to be covered. In fact, I can think of hardly any case where that would be covered. But in this case, where the opposing party is suing to cancel a settlement and part of its claim is not just to get the money back from Berkshire Hathaway, but to reach one step beyond that and get the money back that Berkshire Hathaway paid to Edwards, you've now crossed the line into a covered claim. But would it matter if it wasn't an annuity? What if he had received a lump-sum payment instead of annuity payments? I think, Judge, it would be a harder case for us because it would have been a direct payment by the defendant to Mr. Edwards so there would be some privity there. But there's not even privity here. So it would be a more difficult case to argue for coverage. But in this case, quite frankly, I think most lawyers would have been surprised, as we were, when we got the letter back from the insurance company saying, even though you're being sued by your opposing litigant to cancel the agreement, and some of these allegations relate directly to things you did, draft the complaint, present evidence, things like that, which lawyers do, we're not going to cover you. We're not going to defend you in this case. And the District Judge, I think, saw that and said, that's not right, that's not fair. The duty to defend is broader and I can't unambiguously say this is not covered. Unless the Court has any questions, that's all I have. Thank you very much. Mr. Simpson. Thank you, Your Honor. The argument about there being alleged mistakes or errors by the attorney in handling the underlying case is a new argument for the first time at oral argument. It's not even in the briefs. If you look at the underlying complaint, the only claim against the lawyer is unjust in, Mr. Edwards, is unjust  although plaintiffs, this is not the case, this is not the case, this is not the case, this is paragraph 62, although plaintiffs do not believe that Edwards and Walker were aware of Schmidt's fraud, Schmidt being the client, they nonetheless have been unjustly enriched and plaintiffs have been impoverished without justification or cause. The complaint alleges the client committed fraud, the lawyers didn't know about it. As a result, we can undo the settlement, we get all our money back and the only way in which the lawyer is involved in our claim is he has to give back his fee. It shouldn't make any difference at all that the lawyer chose to take his fee as an annuity versus in cash. It's still a legal fee and nothing. He didn't choose that. Caldive chose that. Yeah, I don't What's the difference in handing the lawyer dollars or a check or an annuity? There is no difference and in settling a case any lawyer who knows what he or she is doing is going to look at what does the annuity cost. It makes a difference tax-wise. Yes, there can be, but in terms of the substance, it's still a legal fee. You might decide to take it over 20 years or you might take it all today but it's still a legal fee and nothing but a legal fee. And so on this issue of whether there's an act or omission, whether the claim's by reason of an act or omission in the performance of legal services, the facts are as both parties briefed them, which was there's no allegation the lawyer knew about the fraud, even no allegation he should have known about the fraud. It says that you, Mr. Client, committed fraud and therefore we get all our money back. The second, as I said, there are two prongs. They have to show it's by reason of an act or omission in the performance of legal services but even if you get over that hurdle, it has to be for damages. And that doesn't mean damages as they could be understood in the context of a lawsuit if you had an undefined term. When a policy defines a term, you use the definition. And that's where the policy defines the kind of damages that are covered as not including legal fees, costs and expenses paid or incurred or charged by any insured, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set off or otherwise and injuries that are a consequence of any of the foregoing. And so the question is, when you've got a complaint there's not a word in there about who brought the claim, whether it's a client or someone else. It says if you've got a claim that says give me back the fees you received, that's not covered. There's not a word about who brought it. And on the face of the underlying complaint there can't be any, this is as clear as they come in terms of this is a claim for return of legal fees. If you look at the cases, and I said Continental is a party to a number of them, they don't come as clear cut as this often, where the plaintiff himself says all I want back is the legal fee. I don't want anything else. Not even attorney's fees. All I want is my legal fee back. And so that is not within the scope of the coverage. And the final point I would make, and Judge Costa you referred to the different policy language in Cole, that's exactly right. That case from 1987 did not include this policy language, and one reason policy language evolves is to make certain that certain points are clear in the policy. And it's hard to imagine how you could be more clear in a policy that we're not going to cover a claim for getting a fee back than what it says. You could add on to the end, we really mean it, or you could add on to the end, you know, you can add words always, but it says damages don't include legal fees, and it goes on to say no matter how they're sought, whether it's by restitution, forfeiture, financial loss, set off, otherwise, any way you can think of, if it's about getting fees back, if it's getting fees back, we don't cover that. And the only other point I would make is that in terms of this clawback issue, Continental has been paying the legal fees because we were ordered to by the District Court. We are doing it under a reservation of rights in terms of repayment. But the critical thing about this case is it is a really important legal issue and precedent because these kind of issues come up repeatedly and other courts look to decisions. So we respectfully request the Court reverse and render judgment for Continental. All right. Thank you. We have the argument. All right. That concludes our docket for today.